Legal Mail Exhibits

:co_dept

CALL OUT FOR DEPARTMENT MAIL ROOM
FOR 04/14/2015

PRINT DATE/TIME: 04/14/2015/07:18:49

PAGE: 2

[[ CALLOUT FOR AT 11:00 IN ]]

POWELL, WILLIAM 159159 F2A W
DOB:09/01/1961

William Powell

Court of Appeal, 1st

:co_dept

CALL OUT FOR DEPARTMENT MAIL ROOM
FOR 06/30/2015

PRINT DATE/TIME: 06/30/2015/07:05:55 PAGE: 5

[[ CALLOUT FOR AT 11:00 IN ]]

POWELL, WILLIAM 159159 F2A W State of Louisiana -
William Powell DOB:09/01/1961 Court of Appeal, First Circuit

:co_dept

CALL OUT FOR DEPARTMENT MAIL ROOM
FOR 07/17/2015

PRINT DATE/TIME: 07/17/2015/08:10:43 PAGE: 1

---

[[ CALLOUT FOR AT 11:00 IN ]]

---

POWELL, WILLIAM 159159 F2A W State Of Louisiana
William Powell DOB:09/01/1961 Court Of Appeal, First Circuit

---

CALL OUT FOR DEPARTMENT MAIL ROOM
FOR 07/31/2015

PRINT DATE/TIME: 07/31/2015/07:31:17 PAGE: 1

[[ CALLOUT FOR LMC AT 11:00 IN ]]

| | | | | |
|---|---|---|---|---|
| POWELL, WILLIAM | 159159 | F2A | W | 22nd Judicial District Court |
| William Powell | DOB:09/01/1961 | | | Washington Parish |

:co_dept

CALL OUT FOR DEPARTMENT MAIL ROOM
FOR 08/06/2015

PRINT DATE/TIME: 08/06/2015/07:51:41 PAGE: 1

---

[[ CALLOUT FOR AT 11:00 IN ]]

---

POWELL, WILLIAM LDC 159159 F2A W State Of Louisiana
William Powell DOB:09/01/1961 Court of Appeal, First Circuit

9/24/2015
7:54 AM

Department of Public Safety Corrections - Corrections Services
Daily Callouts



Date of Callout: 09/24/2015

Locatio **D1 Security Office**

| DOC Number | Name | Mandatory | Start Time | End Time | Housing | Description |
|---|---|---|---|---|---|---|

Date of Ca 09/24/2015
Location: D1 Security Office

| | | | | | | |
|---|---|---|---|---|---|---|
| 159159 | POWELL, WILLIAM | Yes | 11:00 AM | 12:00 PM | FOX 2 TIER A | LEGAL MAIL |
| | | | | | | LEGAL MAIL |

William Powell (corrected)

State of Louisiana Court appeal First Circuit

9/30/2015
8:18 AM

Department of Public Safety Corrections - Corrections Services
Daily Callouts



Date of Callout: 09/30/2015
Locatio **D1 Security Office**

| DOC Number | Name | Mandatory | Start Time | End Time | Housing | Description |
|---|---|---|---|---|---|---|

Date of Ca 09/30/2015
Location: D1 Security Office

| DOC Number | Name | Mandatory | Start Time | End Time | Housing | Description |
|---|---|---|---|---|---|---|
| 159159 | POWELL, WILLIAM | Yes | 11:00 AM | 11:30 AM | FOX 2 TIER A | LEGAL MAIL |

William Powell

State of Louisiana
Court of Appeal, First Circuit

IN THE
22nd JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON
STATE OF LOUISIANA

**WILLIAM D. POWELL**
**( Defendant )**

**VERSUS**
**STATE OF LOUISIANA**
**( Respondent )**

**DOCKET NO. #10-CR3-110833**
**DIVISION-G**
**FILED:**
**CLERK:**

17-2123
SECT. H MAG. 4

**MOTION TO AMEND/SUPPLEMENT POST-CONVICTION RELIEF:**

**NOW INTO COURT,** comes petitioner, William D. Powell, in Pro Se capacity, who respectfully request this Honorable Court to Grant this Motion to Amend-Supplement Post Conviction Relief for the following reasons to-wit:

Petitioner filed a timely Application for Post-conviction relief in this matter;

Petitioner did not receive the trial transcripts records until after the initial post-conviction relief was filed;

Petitioner stands on Article 1, section 1,2, and 19 of the Louisiana Constitution of 1974.

**CONCLUSION AND PRAYER**

**WHEREFORE,** Petitioner prays that this Honorable Court grant his Motion to Amend/Supplement his Application for Post-conviction relief.

William Powell 159159

William D. Powell

**ORDER**

**IT IS THE ORDER of this Court that petitioner's Motion to Amend/Supplement his post-conviction relief is ______________ in this matter.**

**THUS SAID AND DONE ON ________ day of ______, 2014 in Franklinton, Louisiana 70438.**

____________________

**JUDGE**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have sent a true copy of the foregoing matter to the 22nd Judicial District Attorneys Office in the Parish of Washington, by placing the same in the United States postage mail pre-paid and properly addressed as to this matter.

**Respectfully Submitted;**

William Powell 159159

**William D. Powell #**
**Hunt Correctional Center**
**P O Box 174**
**ST. Gabriel, La. 70776**

22nd JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON
STATE OF LOUISIANA

**WILLIAM D. POWELL**
**(Defendant)**

**VERSUS**
**STATE OF LOUISIANA**
**(Respondent)**

**Docket No. #10-CR3-110833**
**Division-G**
**Filed:_____________**
**Clerk: _____________**

## MEMORANDUM IN SUPPORT OF POST-CONVICTION RELIEF

**MAY IT PLEASE THE COURT**

**NOW INTO COURT,** comes Petitioner William D. Powell, in Pro Se capacity, who respectfully moves this Honorable Court to grant his post-conviction relief for the following reasons to-wit:

### JURISDICTION

Jurisdiction is vested in this Honorable Court pursuant to Article 925 of the Louisiana Code of Criminal Procedure.

### STATEMENT OF THE CASE

Petitioner William D. Powell, was charged by bill of information with one-count of Sexual Battery. The bill of information alleged that the offense occurred from May 08, 2008 to December 18, 2009. In the month of October 2010, petitioner mailed the following motions, ( **Discovery; Inspection; Suppress Identification; Suppress Confession; Suppress Evidence and Motion to Quash ),** in the 22nd Judicial District Court, Clerk of Court, in Franklinton Louisiana; and in the First Circuit Court of Appeal, in Baton Rouge, Louisiana.

On February 1, 2011, Jury-Selection started and completed.

On February 2, 2011, the court convened to address Motion to Suppress Identification; Motion to Suppress the confession; Motion to Suppress the evidence; Motion to Quash, and Motion for Discovery; The court continued these motions until April 6, 2011. Petitioner was forced to face his trial without any discovery or pre-trial motions held. Subsequently, petitioner was found guilty of ( **Attempted Sexual Battery** ) without any type of defense strategy or preparation.

On February 4, 2011, one day after petitioners jury-trial, the trial court ruled all pre-trial motions **Moot.**

On April 4, 2011, the trial court sentenced the petitioner to a term of 18 years at hard-labor within the La. Department of Corrections.

The trial court denied motions for new trial, post-verdict judgment of acquittal, and reconsideration of sentence. The motion for appeal was granted.

On April 11, 2011, motion for appeal was requested by the trial counsel James Talley,on April 15, 2011 the Honorable William Crain granted the appeal with a return date of June 29, 2011.

On July 24, 2013, Honorable Scott Gardner signed an order advising petitioner that he should seek the trial transcript from appellate counsel and not from the court without payment of the associated cost.

On September 11, 2011, petitioner filed a motion to submit a Supplemental Appeal Brief, under appeal number #2011-KA-1458 and to review the trial transcripts.

On September 22, 2011, the Chief Deputy Clerk of the First Circuit Court of Appeals ordered that the trial-transcripts be forwarded to the warden of Richwood Correctional Center, that petitioner be allowed reasonable time/access thereto and return it to the Louisiana First Circuit Court of Appeal, Clerk of Court by October 29, 2011, the court also granted petitioners extension of time to file a pro-se brief on or before October 24, 2011. Upon the trial transcripts being sent to Richwood Correctional Center, petitioner only got to see his trial transcripts only once a week one hour per sitting, this condition was done by unknown Captain of that facility. Petitioner also tried to pay to have a copy made, but the captain left this decision to be determined by the inmate counsel substitute. Subsequently, I never got a copy of the trial-transcripts.

Petitioners direct-appeal was denied and became final on March 23, 2012 within the Louisiana First Circuit Court of Appeals.

In the instant case, petitioner forwarded several filings upon the trial court to acquire the trial-transcripts. On November 12, 2012, filing the District Attorneys Office rebutted petitioners attempt of demonstrating his particularized need by addressing petitioners filing as a post-conviction relief application.

Petitioner is unlearned in the law and was misinformed as to sending a post-conviction relief application form concerning trial-transcripts requests.

At no time did petitioner properly address or attack any claims in regards to a attack on his conviction. However, the district attorney office rebutted petitioners record request as a post-conviction application.

Even the trial court through its ruling recognized that petitioner did not brief any claims in details.

Petitioner avers that his direct appeal became final on March 23, 2012, therefore petitioner humbly prays that his post-conviction relief application be viewed as the

initial, in the interest of justice.

On several occasions, petitioner forwarded formal letters to attorney James Talley, requesting the discovery file. Attorney James Talley, failed to respond, so petitioner contacted the Louisiana Disciplinary Board for counsel's on October 25, 2013, advising the board that Mr. Talley was violating his ethical standard by failing to comply with rule 1.16(d) of the Rules of Professional Conduct.

Thereafter, attorney Talley, forwarded some discovery information. Petitioner had to again, seek help in retaining more discovery through the Louisiana Disciplinary Board. I am presently awaiting the information.

Relative, Mrs. Viola Nottingham, had to purchase (page 492, of Trial Transcript-colloquy), which was supposed to be apart of the production of documents requested by petitioner where this honorable court record was inadequate for purposes of post-conviction application proceedings. Requisite form was purchased on August 29, 2014, where it was mailed to petitioner on September 3, 2014, and petitioner received this requisite form on September 12, 2014.

Where the Public Defenders Office, initially withheld page 492, from petitioner. Petitioner now files this post-conviction relief application with a complete record of all evidences upon which this conviction is based. **(see, La. Const. Art. 1, 19).**

**ISSUES PRESENTED FOR REVIEW**

**DID THE TRIAL-COURT VIOLATE PETITIONER'S FOURTEENTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION AND SIXTH AMENDMENT RIGHT TO A FAIR TRIAL, BY ABUSING HIS DISCRETION, IN NOT PROPERLY FINALIZING ALL PRE-TRIAL MOTIONS OF THE PETITIONER, BEFORE TRIAL COMMENCE,**

**AND,**

**PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION AND VIOLATION OF ARTICLE 1, sec. 13 of the LOUISIANA CONSTITUTION OF 1974.**

**LAW AND ARGUMENT**

Article 1, 2 sec.14 of the Louisiana Constitution of 1974 forbids its citizens from being deprived of life, liberty, or property except by due process and equal protection of the law.

The trial court is the mediator between the state and defense. A judge shall dispose of all judicial matters promptly, efficiently, and fairly. He has a adjudicative responsibility to perform the duties of office impartially and diligently.

In the instant case, petitioner filed several pre-trial motions upon the court

months before his scheduled trial date. These motions were filed in order for petitioner to prepare a defense and assist counsel. Petitioner filed timely pre-trial motions, therefore, petitioner had a constitutional right to pre-trial hearings. The trial court prejudice petitioners trial by not following the law and finalizing all pre-trial motions were ruled moot on February 4, 2011 the day after petitioner was found guilty by a jury trial. Petitioners constitutional right of due process by equal protection of law were violated. Petitioner was trialed without any constitutional oversight or discovery concerning his charge.

**( CLAIM ONE )**

**ABUSE OF DISCRETION**

In the instant case, the trial court err where the trial court abused its discretion and violating petitioner's right to a fair trial by allowing the state's witness, JoBeth Rickels to give her opinion as if she was an investigator. In the instant case, the trial court knew that Ms. Rickels testimony was not based upon sufficient facts, or data, that her testimony was not the product of reliable principles and methods, or that the witness had applied the principles and methods reliably to the facts of the case.

The court was aware that JoBeth Rickels was tendered as an expert in forensic-interviewer, (See, Record pg.486, line 26-30 and 490, line 19-31). The court also advised Assistant District Attorney, Jay Adair that it didn't want opinions on the ultimate issues from the person who claims to be an expert questioner, (See, Record pg. 491, line28-32), the judge reiterated that witness JoBeth Rickels testimony was only needed to **validate** that the procedures were followed concerning the admissibility of the CAC-tape to the jury, (See, Record pg. 491, line 1-17, and 492, line 1-15).

Next the court, advised attorney James Talley, that every detective is not a expert in being a detective, (See, Record pg. 493, line 4-7), and that JoBeth Rickels is an expert in maybe getting them to tell there story, (See, Record pg. 494, line18-26).

When attorney James Talley attempted to solicit testimony from ms. Rickels, as a investigator, (See, Record pg. 509, line 26-31), assistant district attorney, **objected** (See, Record pg. 509, line 32), to this line of questioning due to this witness being unqualified to testify as an expert in investigations, (See, Record pg. 510, line1-5). Attorney James Talley, then advised the court that *he was not asking her for an opinion, he just wanted to know what she would have done as an investigator?* (See, Record pg. 510, line 6-9). Clearly this acknowledgment by attorney Talley requires an opinion from Ms. Rickels by requesting her to answer as if she was the investigator. Ms. Rickels clearly stated on the record, that the investigator cannot be present in the interview room, (See, Record pg. 498, line 3-12), or conduct the interview, (See, Record pg. 498,

line 13-16), and that she had no role whatsoever, or any input in what may be an investigation, (See, Record pg. 500, line 22-26).

Yet the trial court allowed this witness (Ms. Rickels), to state her opinion, (See, Record pg. 510, line 11-15), several times, (See, Record pgs. 510, line 16-25; 511, line 1-28; 512, line 1-32; 513, line 1-22; 514, line 19-32; 515, line 1-32; 516, line1-28).

Yet, if the trial court had refused to allow Ms. Rickels to mislead the jury through her unqualified opinion, which violated petitioner's right to a fair trial and prejudiced the jury, by testifying that as if an investigator, there was a reasonable probability that the trial results would have been different which renders the results unreliable. As an interviewer, Ms. Rickels can only testify to her opinion as to what is being said and not facts not known to her because she was an investigator? Ms. Rickels should not have accepted as an expert in forensic interviewer, because Ms. Rickels did not explain to the court the suggestive validity of the procedures in accord with the CAC-process. Ms. Rickels, also acknowledge the inconsistencies in the witness statements/interview? (See, Record pg. 508, line 11-20), in which the inconsistencies of the witness statements during the interview, and the acknowledgment of Ms. Rickels in showing the difference in the field of interviewer and investigator, in which she testified as an investigator and not a interviewer, displayed the courts discretion as an abuse because the court did not admonish the witness, declare a mistrial, and allowed this abuse of discretion to convict the petitioner by way of jury trial.

While the trial court acknowledge the state's witness (Ms. Rickels), was accepted as an expert in forensic-interviewer, the court did not reject the notion that Ms. Rickels testimony of opinion, would influence the jury findings when the jury found the petitioner guilty at his trial? This selective testimony of Ms. Rickels, was proffered by the court and the disobeyed its own ruling of Ms. Rickels opinionated testimony. Ms. Rickels, the state's expert-witness, did testify as an investigator and not an interviewer. The court allowed Ms. Rickels to testify to opinionated/suggestive issues and the court failed to admonish this witness as to her testimony of opinion. This was clearly abuse of discretion by the trial court where the trial court gave its ruling ***to assistant district attorney Jay Adair, that it didn't want opinions on ultimate issues from the person who claims to be an expert questioner?*** The court did not stand on its ruling in which he addressed in open court on the record as to the witness (Ms. Rickels) and her opinionated testimony. By allowing Ms. Rickels to testify in this manner, an admonishing should have been given by the trial court, but nevertheless, the trial court did nothing and allowed the testimony to be used to convict the petitioner. This was clearly an abuse of discretion by the trial court. (See, State vs. Small, 100 so 3d 797 (La. 2012).

The trial court in the instant matter, allowed Ms. Rickels to give testimony as if she was the investigator, knowing that her testimony would be accepted by the jury as if she was a investigator or participated in-part in the investigation? Ms. Rickels testimony should not have been used to convict petitioner where the expert testimony was one of opinion. The trial court allowing this testimony, and Ms. Rickels unqualified expert opinions to be used in petitioner's trial caused prejudicial harm to petitioner's trial where he was convicted by this prejudice. This prejudice alone not only convicted the petitioner but the prejudice caused the petitioner's trial to be **prejudice** where the jury was not informed of the opinionated testimony of the expert and the trial court did not admonish the witness or jury as to this prejudice, which allowed the trial court to **abuse its discretion.** (See, State vs. Savoy, 64 so 3d 457 (La. App. 3 cir. 2011).

In petitioning the court for pre-trial motions, there may have been a reasonable possibility that Ms. Rickels testimony would have been excluded from the state's evidentiary use at petitioner's trial. These pre-trial motions never went in front the trial court before trial commenced. The petitioner filed his motions before trial during pre-trial requisite timing but the court negated from having that motion heard? This is surely abuse of discretion by the trial court. A court shall order any pre-trial motions to lay in its proper jurisprudence where the parties to file/rebut such motion can have the satisfactory of venue in discovery/inspection of relief sought in its pre-trial motions. This was not done by the trial court? **This is clearly an abuse of discretion.**

The trial court in its turn, formed its own methodology of the expert's opinionated testimony, where this said testimony was improper testimony. (See, Daubert vs. Merrell Dow Pharmaceuticals Inc., 516 U.S. 869, 133 L Ed 2d 126 (1995)(citing, State vs. Wheeler,416 so2d 78(La. 1982); State vs. Vidrine, (La. App. 3 cir. 4-29-09) 9 so 3d 1095).

The trial court did not hold an **Daubert hearing,** to proffer whether or not this expert interviewer should be qualified as a expert to testify to opinionated testimony, where this testimony was improper. (See, La. C. E. Art. 702)(State vs. Chauvin, 02-1188, (La. 5-20-03) 846 so 2d 697).

Petitioner contends that by the trial court allowing ( Ms. Rickels ), to testify to improper testimony which denied petitioner his Sixth Amendment right to a fair trial, and his Fourteenth Amendment right under the due-process clause, this expert interviewer requisite as a expert was not whether the expert has the proper qualifications to testify, but to the experts methodology of a particular case. Under Article 841, this methodology is required by the trial court under **Daubert,** to have this expert examine by both the state and defense as a requirement in allowing this expert's testimony to be inadmissible or admissible during petitioner's trial. (See, State vs. Potter, 591 so 2d 1166

(La. 1991)(quoting, State vs. Eleanor Gibson, (La. App. 1 cir. 1987) 515 so 2d 556).

This was a clear abuse of discretion by the trial court where this said court had made its ruling where this expert witness can not testify to opinionated requisites because of the non-factual or truthful facts to be displayed. Opinionated/Improper testimony by an expert witness is improper and the trial court did abuse its discretion in allowing this expert interviewer improper testimony to be admitted as evidence. (See, State vs. Foret, 628 so 2d 1116 (La. 1993)(citing, Daubert, 516 U.S. 869 (1995).

**( CLAIM TWO )**

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In this instant case, petitioner did receive ineffective assistance of counsel from his court appointed counsel Mr. James Talley, of the 22nd Judicial District Court in the Parish of Washington, in the State of Louisiana. This indigent defender's counsel, Mr. Talley solicited testimony from a witness Ms. Rickels, whom was unqualified as an expert in investigation. Ms. Rickels, was only supposed to testify as to the protocol procedures in which she is adopted by the CAC-Children Advocacy Center under regulation policy.

Mr. Talley, petitioner's counsel, in the instant case, allowed this witness Ms. Rickels to testify in front a jury trial as if she was an investigator in petitioner's trial. (See, Tr. Tran. pg. 483, line8-11). If Attorney Mr. Talley, had not solicited Ms. Rickels unqualified opinion as an investigator the jury would not have heard this opinionated testimony. Further, for counsel's ineffectiveness, theres a reasonable probability that the trial outcome would have been different, which renders the trial results unreliable. (See, Strickland vs. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L Ed. 2d 674 (1984).

Mr. Talley, petitioner's counsel, in the instant case, allowed inconsistent testimony of witness Trisha Traylor, to be used to convict petitioner at his trial.

Petitioner William D. Powell, contends that his counsel Mr. Talley was ineffective assistance of counsel where at petitioner's trial counsel failed to challenge, and/or preserve petitioner's rights where the evidence and testimony adduced by the state was of vague and uncorobberated evidence.

In this instant case, when Ms. Rickels was tendered and accepted as a expert in forensic-interviewer, the court ordered that her testimony be based soley on the promulgated regulations of the CAC, and not part of the investigation, where Ms. Rickels testimony as an investigator would be only opinionated and not of true facts. As an forensic-interviewer, Ms. Rickels was only required to testify as to the procedures rendered as to the recorded conversations she had with witness Trisha Traylor. The court

and state was well aware of Ms. Rickels occupation as a forensic-interviewer. When counsel Mr. Talley sought unqualified testimony from Ms. Rickels in the field of investigation, he Mr. Talley, render petitioner's trial unfair. The court and state initially rebelled against her unqualified opinion even though the court and state were aware of her occupation. Mr. Talley did not preserve for appeal issues that would allow the higher courts to rule on as a requirement of its jurisdiction. The trial court made a ruling to the state (A.D.A.-ADAIR), that " ***it didn't want opinions on the ultimate issues from the person who claims to be an expert questioner.*** " Mr. Talley counsel for the petitioner, knew that Ms. Rickels testimony was not based on sufficient facts or data, that her testimony was not the product of reliable principles/methods, or that this witness had applied the principles and methods reliably to the facts of petitioner's case. Mr. Talley was also advised that every detective is not an expert in being a detective, and every interviewer is only proffered by the story that is told to the interviewer, where the story alone maybe truthful/falsified. Mr. Talley knew during Ms. Rickels testimony that " ***no one was allowed in the interview room but her and Trisha Traylor*** , but he continued to question Ms. Rickels as an investigator. With this knowledge of Ms. Rickels, counsel Mr. Talley did not waste any time in questioning this said witness as if she participated/involved herself respectfully in petitioner's investigation because her testimony proved that basically as a investigator she would not have overlooked the inconsistencies of Trisha Traylor's story. (See, Tr. Tran. pg. 474, line 28-32 and 475, line 1-2). Mr. Talley, cousel for petitioner, failed to preserve this issue for review by making a contemporaneous objection to the court, where on review to the higher courts this issue would be reviewed under error-patent. This was not done by counsel, Mr. Talley at petitioner's trial. Whereupon, the court and state acknowledge the requisites of Ms. Rickels unqualified expert testimony, the trial court continually allowed this expert to testify to improper facts an opinionated testimony. This showing was an abuse of discretion by the trial court. (See, Wheeler, Potter, Vidrine, and Foret)( also Article 702, Code of Evidence)(quoting, Strickland vs. Washington, 466 U.S. 668, 687, 80 L Ed 2d 674(1984).

Under **Strickland vs. Washington,** the United States Supreme Court, enunciated the test for evaluating the competence of trial counsel:

**(1) the petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the " counsel " guaranteed the petitioner by the Sixth Amendment.**
**(2) The petitioner must show that the deficient performance prejudiced the petitioner. This requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose results is reliable.**

In petitioner's trial, counsel Mr. Talley, was so deficient in his performance that counsel nonetheless went along with the trial court and state where this said counsel, did not argue, preserve, or object to petitioner's pre-trial motions which had not been heard by the court, Ms. Rickels being allowed to testify to improper/opinionated testimony, allowing the trial court to admit inadmissible evidence into petitioner's trial, where the state proffered a conviction using inadmissible-evidence of an unqualified expert-witness, where the trial court abuse its discretion in allowing the petitioner's trial to be unfair and prejudice. (See, United States vs. Carney, (6-09-04)(citing, State vs. Foret, 628 so2d 1116, 1121(La. 1993). In addition, when evaluating the performance of counsel, the inquiry is whether counsel's assistance was reasonable under the circumstances. **See, State vs. Morgan, 472 so 2d 934, 937(La. App. 1 cir. 1985)(State vs. Baker, 816 so 2d 363, 01-1397, La. App. 5 cir. 4-30-02)**, and states that " the credibility of the witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." **See, State vs. Rowan, 97-21(La. App 5 cir. 4-29-97), 694 so 2d 1052, 1056.**

**Baker,** goes on to state, " where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witness, it is a matter of weight of the evidence and not the sufficiency of the evidence. **See, State vs. Brooks, 00-106, (La. App. 5 cir. 9-26-00), 769 so 2d 1242, 1245;** which requires that credibility determinations are best made by the trial judge and are not to be overturned by the appellate court absent a finding of manifest error." Petitioner contends if acting effectively, counsel would have surely emphasized the harm of the state and court where counsel would have preserved, argue, objected, to the issues for the higher courts to review on petitioner's behalf. Petitioner contends that trial counsel, if acting effectively, being trained in law and having full knowledge of the consequences of not fully emphasizing such matters during trial, makes trial counsel very deficient and ineffective. Petitioner contends that with these deficiencies, of the trial counsel, trial counsel Mr. Talley, did deprive petitioner of his Sixth Amendment right to a fair trial, where counsel was ineffective as counsel.

**FURTHERMORE,** with counsel in being deficient in his performances, if acting effectively, counsel would have contested any and all matters in reference to the state's expert-witness allowed testimony, trial court's abuse of discretion, and the inconsistent-testimony of the state witness Trisha Traylor. In trial counsel not urging these procedural/constitutional matters, trial counsel prejudiced petitioner in his trial in allowing those uncontested, un-preserve, unobjected to issues to convict petitioner during his trial. Petitioner contends that counsel, if acting effectively, would have given reasonable discretion to the effectiveness of his duties as counsel and would have

rendered effective assistance of counsel. Trial counsel's errors were so serious that petitioner lost his liberty because of counsel's neglect to perform his duties as a trained counsel of law in the system of justice.

**1. Was this Derelict of trial counsel?**

**2. Was trial counsel ineffective in his performance and prejudiced petitioner?**

This was surely a deficient performance by counsel, and trial counsel caused petitioner to further his claim in showing counsel's ineffectiveness.

The general rule is that counsel's performance is to be evaluated on the basis of the totality of the circumstances in the entire record. The " reasonably effective assistance " standard requires an evaluation of counsel's conduct on the basis of the record as a whole. Whether counsel rendered effective assistance is a mixed question of law and fact. The court of appeals is therefore free to substitute its own judgment for that of the district court.

The right o9f counsel guaranteed by the U.S. Const. Amend. VI, is a fundamental right and applies through U.S.Const.. amend. XIV, to the state's. Under Louisiana Constitution of 1974, the right is guaranteed by the Amendment VI and XIV. This vital component of the judicial system includes within its broad compass the right to a minimal quality of counsel, defined as the right to effective assistance of counsel. The right of effective assistance of counsel is present at every stage of an criminal proceeding where substantial rights of a criminal accused may be affected, and consequently extends to sentencing proceedings in criminal cases. While the legal standard of effective presentation does not change from case to case, this does not mean that the severity of the sentence faced by a criminal petitioner should not be considered in determining whether counsel's performance meets this standard. The number, nature, and seriousness of the charges against the petitioner are all part of the totality of the circumstances in the entire record that must be considered in the effective assistance calculus.

**FURTHERMORE,** taking into account all of the circumstances of the case at bar, but only as those circumstances known to trial counsel, at the time in question. This Honorable Court assesses counsel's performance on the basis of the facts known to him, and the rules of law and procedure he is held to know as an attorney representing petitioner's in criminal proceedings.

The sentencing process consists of weighing mitigating and aggravating circumstances/factors, and making adjustments in the severity of the sentence consistent with this calculus. Each item of testimony has an incremental effect, large segments of highly prejudicial, inconsistent testimony, improper testimony, abuse of discretion, skewing the calculus and invalidating the result reach. **Citing; Washington vs. Estelle,**

**648 f. 2d 276, 279 (5 cir.)(454 u.s. 899, 102 s. ct. 402, 70 L Ed. 2d. 216(1981); also see, Wiggins vs. Smith, 539 u.s. 510, 534-38(2003).**

It is petitioner's belief that this warrants review through evidentiary hearing, due to the fact that the credibility issues of the witness is only key evidence used to convict the petitioner and trial counsel was ineffective in failing to preserve, argue, or object to the challenge credibility of this said witness. Notwithstanding, although the court may choose not to review the credibility of the witness, the court should, in accordance with the statutory law mentioned, review this in light of defense counsel failing to do so and essentially barring petitioner from bringing it up any further. An effective counsel is not error-less counsel. If counsel was effective at petitioner's trial,

1. Why did counsel not argue, preserve, object, or challenge the trial court ruling on Ms. Rickels being allowed to testify as a expert in forensic-interviewer?
2. Why did counsel not preserve any of petitioner's matters for review?
3. Why did counsel not notify the jury of this requisite material evidence? **See, Wiggins vs. Smith, 539 u.s. 510, 534-38 (2003).**

By not bringing to light the credibility issues of the state's and the trial court's decision, contained in the only evidence the state presented, being the testimony of this said witnesses, the trial counsel was clearly deficient and ineffective at petitioner's trial. Trial counsel severely prejudice the defendant. Trial counsel deprived petitioner of his Fourteenth Amendment right to due-process of law and Equal protection rights. Trial counsel deprived petitioner of his Sixth Amendment right to a fair trial, and Sixth Amendment right to effective counsel. Petitioner contends that trial counsel did denied him his fundamental right to a fair trial where counsel's unfair neglect and unfair representation. **See, State vs. Jarman, 445 so 2d 1184, (La. 1984); State vs. Rice, 736 so. 2d 956, 31, 87, La. App. 2 cir. 3/31/97.**

The probability, and their was, because the jury had nothing but the testimony of these witnesses to go by, an effective counsel would have brought to light the professionalism of its duty and the result would have been different. At the very least it is sufficient because the jury returned a verdict of guilty after hearing **unargued, unobjected, unpreserved, inconsistent testimony, opinionated testimony, improper testimony, contradictorily testimony, and un-coroborated evidence.**

This probability, and their was, because the jury did not know of these material findings of the courts decision or the state's decision to use improper testimony of a unqualified expert, trial counsel was very deficient and prejudice to petitioner where this prejudice denied petitioner his right to a fair trial, where if the deficiency of trial counsel performance was effective the results of petitioner's trial would have been different.

Petitioner contends that trial counsel Mr. James Talley, was ineffective

assistance of counsel during petitioner's trial where trial counsel failed to impeach the (victim) Trisha Traylor, when she testify to inconsistent testimony. If counsel James Talley, had properly cross-examined this witness Trisha Traylor, he could have demonstrated to the jury the credibility issues with this witness. **In support of this claim petitioner points out these facts:**

**(1) On are about December 18, 2009, Trisha Traylor initially advised Deputy Steven Galloway of the Washington Parish Sheriff's Department that the petitioner stuck his hands down her clothes and hurt her several times (approximately, 4-times) around her private, (see, pg. 3 of incident report number #2009120618).**

**This information is inconsistent with the January 11, 2010 interview of Trisha Traylor by Ms. JoBeth Rickels and Detective Anthony Stubbs. In this interview she makes no mention that petitioner touched her 4-times or that she was hurt. She now advises that the petitioner only touched her 1-time and attempted to do so another time. (see, pg. 4 incident report number #2009-120618). And again her story changed to petitioner only touched her 2-times, (see, Tr. Trans. pg. 474, line 28-32, and 475, line 1-2) and still does not mention that she was hurt as was alleged in the initial December 18, 2009 interview with officer Steven Galloway.**

**(2) Trisha Traylor advised Detective Anthony Stubbs, that the petitioner threatened her that she better not tell or else, (see, pg 4 of incident report number #2009-120618). Her trial testimony changed to the petitioner did not threatened her, (see, Tr. Trans. pg. 461, line 23-24, and pg. 476, line 1-7).**

**(3) Trisha Traylor advised Detective Anthony Stubbs, that the incident occurred when they were all at the camp? (see, pg. 4 of incident report number 2009-120618). The trial testimony changed to Suzie and Paula not being at the camp, (see, Tr. Trans. pg. 452, line 6-15, and pg. 471, line 17-22).**

**(4) In page 4 of the incident report, Trisha Traylor, advised Detective Stubbs that the petitioner made her touch his penis through his pants on the outside of his pants. Her trial testimony changed to her touching the petitioner's middle under his shorts? (see, Tr. Trans. pg. 460, line 13-30).**

**(5) In page 3 of the incident report by Officer Steven Galloway, Shannon Traylor advised the officer that the alleged crime was discovered during a family discussion about girlfriends and boyfriends? But when Trisha Traylor was asked at the trial how the alleged crime came out, she stated she did not know, (see, Tr. Trans. pg. 462, line 24-26).**

Trial counsel James Talley, possessed several police reports in which to impeach these witnesses had Mr. Talley observed petitioner's 6th Amendment right, these witnesses would have been discredited. But for counsel's errors, the results cannot be

relied upon as having a just result, which renders the result unreliable.

Attorney for the state Jay Adair, tells the jury that Trisha remembers these details like it was yesterday because you don't forget these kinds of traumatic experiences (see, Tr. Trans. pg. 629, line 2-6), yet, Trisha's trial testimony changed several times from the facts submitted to officer Galloway, Det. Stubbs, and JoBeth Rickels.

During closing arguments Attorney James Talley, knew that Trisha Traylor testified 2-different ways, (see, Tr. Trans. R. pg. 637, line 10-22), and yet Mr. Talley made no efforts to impeach this witness, and again Trisha Traylor testifies that petitioner never touch her on her middle any other times, (see, pg. 459, line 26-28).

Petitioner contends that counsel James Talley, was deficient in his performance as counsel and that performance prejudice petitioner where counsel if effective, would have provided petitioner with his full abilities as a trained professional counsel. If counsel was effective, he would have preserve, argued, and objected to all petitioner's issues where the higher courts would have prevailed in honoring petitioner's preserved issues and overturned the trial courts decision where the trial court allowed the jury to hear improper/inconsistent testimony from unqualified experts and witnesses. This degree of deficient performance and prejudice, only allowed the jury to access the information in which the state had already examined with in its manifest error. In Strickland vs. Washington, effective counsel would have properly identified that these inherited issues and immediately requested for an objection to the court refuting these issues and not allowing the state to introduce this inadmissible evidence into the evidence. Counsel Mr. James Talley, did not apply this as counsel is fully trained in the ethics of law. Counsel James Talley, was not interested in any of the testimony given by these witnesses against the petitioner during his trial, where if counsel had effectively entertained the evidence and testimony of these said witnesses for the state, counsel would have prevailed at bringing to the jury's attention the differences in the case trial in chief. Counsel James Talley, was deficient in his performance and prejudice the petitioner where this prejudice unreliably deprived petitioner of his right to a fair trial. Petitioner contends he had a substantial right to have this inadmissible evidence ruled on during his trial where if counsel had objected/preserved these issues as to the court allowing these issues to be introduce into evidence, petitioner's would have an opportunity to seek or have his issues heard by an superior court of its jurisdiction. This issues sought by petitioner was used to convict the petitioner during his trial. Counsel James Talley, did not proffer any type or atypical objection to any of these issues, which clearly shows that counsel was ineffective assistance of counsel during petitioner's trial an that prejudice of counsel's performance caused the petitioner an unreliable result

which that result undeniably is not reliable. Petitioner contends that his trial counsel James Talley, was ineffective as counsel and if effective during petitioner's trial-sentencing phases the results of his trial would have been different, where the outcome would have been different, and petitioner would not have endured a guilty verdict during his trial.

Furthermore, trial counsel James Talley, failed to impeach Trisha Traylor's testimony where she testified that she did not tell anyone of the issue of petitioner touching her in any inappropriate ways? In accordance with the trial testimony of Paula Traylor's, Trisha Traylor told her that petitioner accidentally touched her but it was never revealed where or if it was inappropriate, fondling, or just touched her privates? (See, Tr. Trans. pg. 597, line 1-4); but at petitioner's trial Trisha Traylor testified that she did not tell anyone. Paula Traylor testified for the petitioner that at her dad's house Trisha Traylor stated to her that whenever they were visiting with her dad, petitioner touched her? Trisha Traylor never told no one of this issue? Why? Why didn't Trisha Traylor tell her aunt Paula what had happened to her at that time if they tell each other everything to tell? These events had not reasonably taken effect because these issues never happened. Prior to petitioner and Ms. Cecilia Traylor even getting involved in a committed relationship, Trisha Traylor was going to counseling/therapy for sexual-abuse. Testimony derived from character witnesses shows that Trisha Traylor had been previously sexually-abused by someone but not the petitioner. Cecilia Traylor testified that she and Sharon had been taking Trisha to professionals, counselor's, and therapist because of this behavioral issues, where her grandfather had sole custody of her and her brother an the only given facts are that trisha told her aunt paula that things happened while visiting with her dad paul at his home not the petitioner's home. Trisha Traylor never told anyone of these events as they occurred and waited one in half years to tell her mom's about these issues? Trisha never said a word to her brother whom was there, maw-maw cecilia who was there, paula who was there that petitioner touched her inappropriately but instead told her mom sharon/shannon or even grandfather paul, whom did not like petitioner because petitioner was going out with his former wife? Paula and Cecilia Traylor has no reason to believe that petitioner inappropriately touched trisha traylor? Both witnesses testified that petitioner allowed both trisha and her brother to live with him at his cabin? Paula Traylor also testified and signed a statement that her father made her say that petitioner touched her? Why? Is this testimonial fact untrue? What reason does this witness Paula Traylor has to lie on her niece trisha traylor? With these inconsistencies in her testimony, Trisha Traylor's testimony is insufficient to sustain a conviction where the inconsistencies or confusing, contradictorily, and was a waist of the courts time during petitioner's trial. Counsel

James Talley, should have impeached Trisha Traylor as to this testimony where an effective counsel would have examined the police reports, counseling tapes, investigated all the alleged requisites that would have precluded the petitioner from being found guilty for this alleged offense. These given facts has substantiated that given all testimonial facts, witness Trisha Traylor made up the alleged allegations which proffered the petitioner to be found guilty of this said offense.

Strickland vs. Washington, depicts this same standard where counsel was deficient in his duties not strategies, and where the deficiencies prejudice the petitioner in not resulting in a fair and just trial. An effective counsel upon accruing a client's case, would do a thorough investigation first into the alleged charged offense? This was not done? An effective counsel upon accruing a client's case, would have discussed with his client the facts of his investigation with his client? This was not done? An effective counsel upon accruing a client's case, would have thoroughly explained to his client the procedural background and the nature of the alleged charges where their can be some type of strategy placed upon the client for preparation for trial? This was not done? An effective counsel upon accruing a client's case, would have filed/adopted all his client's pre-trial motions and had them heard in open court where the court could have made a selective ruling on the pre-trial motions? This was not done? An effective counsel upon accruing a client's case, would have objected, argued, and preserved all petitioner's issues for trial where the higher court's upon review would have concluded that the evidence of this trial was inadmissible-evidence and could not have been used to convict the petitioner? This was not done?

These issues was not properly done by this trial counsel, where counsel is trained in the field of law its counsel deficient performance which prejudice petitioner's trial and verdict of the jury trial which counsel did not provide effective counsel. This deficiency violated petitioner's Sixth Amendment right to a fair trial and petitioner's Fourteenth Amendment right under the due-process clause.

The Sixth Amendment of the Louisiana Constitution of 1974, and the United States Constitution Fourteenth Amendment Due-process Clause, guarantees petitioner the right to be afforded a impartial and unbiased trial and where due diligence of effective counsel is warranted. In the case before the bar, petitioner contends that his trial counsel James Talley was ineffective assistance of counsel during petitioner William David Powell trial, where trial counsel's performance was deficient and the deficiencies of counsel's performance prejudice petitioner where the outcome had counsel been effective, would have been different. **Strickland.**

## CONCLUSION/PRAYER

Petitioner prays this Honorable Court grants petitioner's Motion to Amend/Supplement his post-conviction relief application which was timely filed in this Honorable Court, and where petitioner has decree all signatures and proper filings within this Honorable Court.

Petitioner prays this Honorable Court grants petitioner's Application for post-conviction relief where petitioner has accrued his claims in this Honorable Court, under Article 926.

Petitioner prays this Honorable will grant and **set aside petitioner's conviction and sentence** where upon evidentiary findings under Article 927, ( IF-ESTABLISHED ) would warrant relief under Article 930.

Petitioner prays this Honorable Court grant petitioner's application for post-conviction relief where the issues presented in this application is of proper grounding and jurisdictional review in this Honorable Court.

**Respectfully Submitted;**

*William Powell*

**William David Powell**
**Doc No. #** 159159
**Hunt Correctional Center**
**P. O. Box 174**
**ST. Gabriel, La. 70776**

## CERTIFICATE OF SERVICE

**I William D. Powell, certify that a true and correct copy of the foregoing petition for Amend/Supplement has been forwarded to the proper parties through the Elayn Hunt Correctional Center mail-room where this institutional faculty has the jurisdiction to process this pre-paid U.S. Postage mail.**

William Powell

**William D. Powell**
**Doc No. #** 159159
**Hunt Correctional Center**
**P.O. Box 174**
**ST. Gabriel, La. 70776**

## AFFIDAVIT

I swear that under penalty of perjury that all the information in this petition is true to the best of my knowledge and belief. It is to my belief that the foregoing persons are certified to notarize this petition as to me being the same person in said litigation of truth. Signed on this said date of 7, in Novemed, 2014.

Authorized person of Notary John McGovern
Seal and Number 40793
Title Class. Mgr.

John McGovern #40793
EX-OFFICIO NOTARY
Department of Public Safety & Corrections

Petitioner William Powell 159159 Date 11-7-14

**CC:**
**PLEASE SERVE:**
**Washington Parish District Attorney's Office**
**C% Mr. Walter P. Reed**
**Justice Center, 701 N. Columbia Street**
**Covington, La. 70433**

SUPREME COURT OF LOUISIANA
STATE OF LOUISIANA

NUMBER:________________

WILLIAM DAVID POWELL 17-2123

VERSUS

STATE OF LOUISIANA

APPELLATE COURT DOCKET NO.

FIRST CIRCUIT COURT OF APPEAL;

CRIMINAL DOCKET NO.10-CR3-110833,

PARISH OF WASHINGTON ,STATE OF LOUISIANA

HONORABLE JUDGE ,WILLIAM J. CRAIN PRESIDING

PETITION FOR WRITS OF CERTIORI, AND REVEW

AN ORIGINAL BRIEF FILED ON BEHALF OF

WILLIAM DAVID POWELL, APPELLANT

RESPECTFULLY SUBMITTED,
William D Powell
ELAYN HUNT CORRECTIONAL CENTER
6925 HIGHWAY 74, P.O. BOX 174
SAINT GABRIEL, LOUISIANA 70776

## APPLICATION FOR WRIT OF CERTIORARI

The application of William D. Powell, herein referred to as relator, applying for writ of Certiorari with respect does show the following:

Relator is suffering from a wrongful disposition of the law wherein the 22nd Judicial District Court, Parish of Washington, State of Louisiana, denied his Supplement / Amended Post Conviction Relief Application, and the First Circuit, Court of Appeal, denial of petitioner's Reconsideration of Mandamus filing. Relator now seeks relief from this Honorable Court.

## THE HONORABLE SUPREME COURT OF LOUISIANA:

The petition of William D. Powell, appellant herein, filing an Application for writ of Certiorari, and review in matter No. 2015-KW-1182 ,on the docket of the First Circuit Court Of Appeal and Docket No. 10-CR3-110833, 22nd Judicial District Court, for the Parish of Washington.

## STATEMENT OF JURISDICTIONS

Jurisdiction vests in this Honorable Court under and by virtue of the provisions of Article 5, Section 10 of the Louisiana Constitution of 1974, as amended, granting the jurisdiction over reviews arising within.

## RULE X WRIT GRANTING CONSIDERATION

The decision of the court of appeal in this case should be subject to this Honorable Court's Supervisory Authority in accordance with:

**Rule X(1.),(a) 4 Erroneous Interpretation or Application of the Constitution or Laws.**

A Court of Appeal has erroneously interpreted or applied the constitution or a law of this State or a law of this State or the United States and the decision will cause material injustice or significantly affect the public interest.

## STATEMENT OF THE PROCEEDINGS

On the 10th day of March 2014 William D. Powell, the appellant filed his initial Post Conviction Relief within the 22nd Judicial District Court. The trial court filed the post but advised petitioner his writ wasn't properly before the court due to relevant documents missing. Petitioner was never advised as to a time line concerning forwarding the documents. Subsequently, petitioner develop additional claims through additional discovery once the Louisiana Disciplinary Board advised Attorney James Talley about rule 1.16. (d) of the Rules of Professional Conduct. So petitioner filed a Supplemental Post Conviction Relief on November 12, 2014. Due to petitioner not receiving an answer to his previous filing, petitioner submitted a mandamus to the First Circuit Court of Appeal, ( See 2015-KW-0584), in order to get the Trial Court to respond to his writs. Upon the Circuit court ordering the trial court to answer, petitioner became aware that his motion to amend\ supplement his post conviction had been denied on February 8, 2015. Petitioner has never received this allege ruling. The prison sign in legal mail book will show the petitioner never received this ruling. Therefore, petitioner filed a Motion to Reconsider the Mandamus, See ( Appeal No. 2015-KW-1182) back into the Louisiana First Circuit to advise the court about this miscarriage of justice, it was denied on September 21, 2015.

## LEGAL DISCUSSION

Petitioner assert that the trial court and appeal court is in violation of his due process and equal protection rights under both the U.S. Constitution and Louisiana Constitution Article 5, section 2, the Louisiana Supreme Court held in, ***State ex rel. Foy v. State***[1] the following:

> "Writ granted in part, otherwise denied. The district court is ordered to furnish relator with copies of judgment granting or denying relief on the application of post conviction relief along with written or transcribed reasons for the judgment as required by La. C. Cr. P. art. 930.1. ....."

1 666 So.2d 1097 (La. 1996) (citing ***State ex rel. Baker v. State***, 95-2228 (La. 12/08/95), So.2d ); ***State ex rel. Whittaker v. Lombard,*** 559 So. 2d 116 (La. 1990)).

Also, under La, Code of Civ. Proc. Ann. Art. 1151-1156; Petitioner has a legal right to amend and / or supplement his filing if the court hasn't responded to the initial filing.

**ASSIGNMENT OF ERROR**

(1)

The Trial Court erred when it failed to consider La. Code of Civ. Proc. Ann. Art. 1151-1156 and La Code of Crim. Proc. Art. 930.1. concerning petitioner's Reconsideration of Amended / Supplemented Post Conviction Relief Application.

In the instant case, petitioner's initial post conviction had never been ruled on until July 31,2015 thereby allowing petitioner the right to supplement his initial P.C.R. in accordance with La. Code of Civ. Proc. Ann. Art. 1151-1156. As to the trial courts assertion of handing down a denial for petitioners Amended / Supplemented Post Conviction Relief Application under criminal docket No; 10-CR3- 110833 within the 22nd Judicial District Court this ruling was never forwarded by the 22nd Judicial District Clerk of Courts office to Petitioner or his custodian.

These facts are based upon information received from Lt. Col. Wanda Mathews of Elayn Hunt Correctional Centers Legal Mail Department, concerning incoming Legal Mail to the petitioner.

Petitioner requested a copy of all incoming Legal Mail from November 11, 2014 until September 30, 2015.Ms. Mathews forwarded copy of all incoming of the legal mail directed to the petitioner. during that time span. A close inspection of the legal receipts show that petitioner did not receive any legal mail from the Twenty-Second Judicial District Court until July 31, 2015.[2] And this response was the to answer to a filing petitioner had to file, ( Writ of Mandamus), in order to get any type of answer to his post conviction relief ("PCR") filings.

The First Circuit Court of Appeals ordered the district attorney to respond to petitioner's initial PCR. Subsequently, petitioner learned of the February 08, 2015 ruling handed down from the Twenty-Second Judicial District when the First Circuit Court of Appeals ruled on his Mandamus on the date of 7-13-15 to get the district attorney's office to respond to petitioner's initial PCR filings.

2 See also attached exhibits.

Accordingly, Under La. C. Cr. P. 930.1, the statute provides: "A copy of the judgment granting or denying relief shall be furnished to the petitioner, the District Attorney, and the Custodian." However, this was never done.

The court of appeal have a duty to not only review for, but to recognize and correct, constitutional levels of errors on the record. The failure of the court of appeal to do so should not be impugned to the relator.

The denial of petitioners write of mandamus is a technique being used by the court in order to prevent petitioner from bringing fourth his Amend / and Supplement Post – Conviction, And presenting it to the higher court where the Amend / and Supplement Post – Conviction can be ruled on the merits of the claims set fourth within the petitioners Supplement post -conviction , The 22nd Judicial District court ruled on petitioners Amend / and Supplement Post – Conviction February 8, 2015 The 22nd Judicial District Clerk of court office has not sent Notice of that ruling to the petitioner. Therefore denying petitioner his constitutional Right to Appeal .

Exhibit ( A )

The Attached Documents, ( In coming legal mail records from Elayn Hunt Correctional Center, clearly demonstrate that the 22nd Judicial District Clerk of Court Office fail to forward the Notice of the February 8, 2015 ruling on petitioners Motion to Amend / and Supplement Post – Conviction, thereby depriving petitioner of his constitutional Right to appeal the allege February 8, 2015 denial of his Supplemental petition. La. Code Crim. Proc. Ann. Art. 930 .1 simply directs the district court , upon ruling on an application for post conviction relief, to furnish to the petitioner, to the district attorney and to the custodian a copy of the judgment granting or denying relief . With this, please find the a copy of petitioner's incoming legal receipts from E.H.C.C. Mail Dept. which show that petitioner's supplemental filing was done in compliance with La. Code of Civ. Proc. Ann. Art. 1151-1156.

## RELIEF SOUGHT

For this honorable court to allow petitioner the opportunity to appeal the allege February 08, 2015, District Court's ruling of his Supplemental post conviction Relief Application within the First Circuit Court Of Appeal

## CONCULSION AND PRAYER

**WHEREFORE** relator avers that he should not be penalized for the state impediments by the Clerk of Court, Johnny Crain's, failure to forward the February 08, 2015 Court's ruling for petitioner's Amended/supplemented PCR filing. Therefore, in the interest of justice, petitioner humbly request that he be allowed to appeal the 22nd Judicial District Court's denial of his supplemental PCR to the Louisiana First Circuit Court of Appeals; served a notice of the 22nd District Court's rulings; and/or that this Honorable Court exercise it's supervisory power to order the District Attorney's of the 22nd Judicial District to rule on the merits of his amended and supplemented PCR in accordance with La. Code of Civ. Proc. Ann. art. 1151-1156

Respectfully submitted,

William D Powell

William D. Powell # 159159
E.H.C.C.
Fox 2-A
P.O. Box 174
St. Gabriel LA. 70776

**CERTIFICATE OF SERVICE**

I. William Powell, do hereby certify that I have mailed the attached and enclosed writ of certiorari to the Clerk of Court for the Louisiana Supreme Court located at the physical address of 400 Royal Street, New Orleans 70130 via U.S. postal service, utilizing the mail box rule (postage will be attached by prison person) this 21 day of October, 2015.

William D Powell

William Powell # 159159

IN THE

1 CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

CASE NO:________________

WILLIAM D. POWELL

VERSUS

STATE OF LOUISIANA

*****************************************************************************

APPLICATION FOR WRIT OF MANDAMUS DIRECTED TO THE 22 ~~TH~~ND JUDICIAL DISTRICT COURT, PARISH OF WASHINGTON, STATE OF LOUISIANA, DISTRICT COURT DOCKET NUMBER 10-CR-3-110833.

*****************************************************************************

CRIMINAL PROCEEDINGS

Respectfully submitted,

William David Powell
William D Powell
EHCC / Fox 2-A
P.O. Box 174
St. Gabriel, La. 70776

**MAY IT PLEASE THIS HONORABLE COURT:**

**NOW INTO COURT** comes William Powell, in pro se capacity, hereinafter "petitioner" who respectfully moves this Honorable Court for an issuance of a Writ of Mandamus in the above captioned matter. In support thereof, petitioner presents the following facts, to wit:

**JURISDICTION**

Jurisdiction is vested in this Honorable Court by virtue of Article V, Section 10 of the Louisiana Constitution as amended in 1974, and LSA-C. Cr. P Art. 3862.

**STATEMENT OF FACTS**

**1.**

On or about the ~~10th~~ 3rd day of ~~November~~ March 2014, petitioner filed a Post Conviction Relief Application / supplemental Post convictic in the 22 Nd Judicial District Court, pursuant to Docket No. 10-3-110833. **(Please see attached Exhibit A).** Exhibit B). Exhibit C).

**II.**

Petitioner asserts that the 22 Nd District Court has had ample time to rule his Post Conviction Relief Application and has failed to do so.

**III.**

Petitioner contends that his Post Conviction Application Has merit and that the District Court's failure to rule in this matter is denying petitioner due process of law, and the law provides petitioner no other relief by ordinary means to proceed with his claims.

Wherefore, considering the foregoing, petitioner prays this Honorable Court will act upon his pleadings, granting him the relief he is entitled, and order the lower court to respond thereto.

Respectfully submitted,

William Powell

William David Powell
EHCC / FOX 2-A
P.O. Box 174
St. Gabriel, La. 70776

**STATE OF LOUISIANA**

**PARISH OF IBERVILLE**

## VERIFICATION / CERTIFICATE OF SERVICE

I William Powell, do hereby declare under penalty of perjury that I am the petitioner in the foregoing pleadings and I have read and attest that all matters are true and correct to the best of my knowledge and belief.

Further, I hereby certify under the penalty of perjury that I have forwarded a true copy of the foregoing to office of the Clerk of Court for the 22ndth District Court, Parish of Washington and the District Attorney for the Parish of Washington by placing same in the United States Mail, properly addressed, this 6 day of April 2015.

S/ William D Powell

IN THE

_____ CIRCUIT COURT OF APPEAL

STATE OF LOUISIANA

CASE NO:________________

________________________________

VERSUS

STATE OF LOUISIANA

****************************************************************************

# ORDER

****************************************************************************

**IT IS HEREBY ORDERED,** that defendant's Application for Writ of Mandamus is GRANTED and that the _______th Judicial District Court, Parish of __________________, State of Louisiana, is to issue or grant relief in the above captioned matter within _________ days of this __________ day of _____________________, 201___.

**SIGNED THIS _________ DAY OF ______________________, 201____ IN CHAMBERS.**

____________________________________

**HONORABLE JUDGE**

**Please Serve:**

________________________

EHCC / __________________
P.O. Box 174
St. Gabriel, La. 70776

District Attorney's Office
_______ Judicial District

_______________, La. ____________

Attn: Records Department
Elayn Hunt Correctional Center
P.O. Box 174
St. Gabriel, La. 70776

William David. Powell
Elayn Hunt Correctional Center
P. O. Box 174,
St. Gabriel, Louisiana 70776

CLERK OF COURT
FIRST CIRCUIT COURT
P. O. Box 4408
BATON ROUGE La, 70821

September 11, 2015

Re. WRIT OF REVIEW – POST – CONVICTION RELIEF

Dear Clerk,

Enclosed Please find petitioner's Writ of Review. Please file this writ into the court and Forward the Docket number ___________. Thank you for your time and help concerning this matter.

Respectfully Submitted,

William Powell

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER ________________

STATE OF LOUISIANA

VERSUS

WILLIAM DA VID POWELL

---

ON SUPERVISORY WRIT OF REVIEW FROM THE DENIAL ON APPLICATION

FOR POST CONVICTION RELIEF

CRIMINAL DOCKET NO;10 -CR3-110833

PAIRSH OF WASHINGTON

DIRECTED TO THE HONORABLE FIRST CIRCUIT COURT OF APPEAL

HONORABLE SCOTT GARDNER, JUDGE PRESIDING

---

OEIRINAL BREF ON BEHALF OF WILLIAM DAVID POWELL,

PETITIONER – APPELLANT

RESPECTFULLY SUBMITTED;

William Powell

WILLIAM D, POWELL # 159159
HUNT CORRECTIONAL CENTER
P.O.BOX 174 ST GABRIEL LA. 70776

JURISDICTIONAL STATEMENT

Jurisdiction in this case is vests in this Honorable Court pursuant to the provisions of Article 930. 6 (A).

STATEMENT OF THE CASE

Petitioner William D. Powell, was charged by bill of information with one count of Sexual Battery. The bill of information alleged that the offense occurred from May 8, 2008 to December 18, 2009 In the month of October 2010, petitioner mailed the following motions. (Discovery; Inspection; Suppress Identification; Suppress Confession; Suppress Evidence and Motion to Quash ), to, the 22nd Judicial District Court, Clerk of Court, Franklinton Louisiana; and in the First Circuit Court of appeal, in Baton Rouge Louisiana.

On February 1, 2011, Jury Selection started and completed.

On February 2, 2011, the court convened to address Motion to Suppress Identification; Motion to Suppress the confession ; Motion to Suppress the Evidence; Motion to Quash ,and Motion for Discovery; The court continued these motions until April 6, 2011. Petitioner was forced to face his trial without any discovery or pre-trial motions held. Subsequently, petitioner was found guilty of ( Attempted Sexual Battery ) without any type of defense strategy or preparation.

On February 4, one day after petitioner jury – trial, the trial court ruled all pre- trial motions MOOT. ON April 4, 2011, the trial court sentenced the petitioner to a term of 18 years at hard – labor within the La. Department of correction.

The trial court denied motion for new trial, post – verdict judgment of acquittal,and reconsideration of sentence. The motion for appeal was granted.

On April 11, 2011, motion for was requested by the trial counsel James Talley, on April 15. 2011, the Honorable William Crain granted the appeal with a return date of June 29, 2011.

On July 24, 2013, Honorable Scott Gardner singed an order advising petitioner that he should seek the the trial transcript from appellate counsel and not from court without payment of the associated cost.

On September 11, 2011, petitioner filed a motion to submit a Supplemental Appeal Brief under number 2011-KA- 1458.

On September 22, 2011, the Chief Deputy Clerk of the First Circuit Court of Appeals ordered that the trial – transcript be forwarded to the warden of Richwood correctional

center, that petitioner be allowed reasonable time / access thereto and return it to the Louisiana First Circuit Court of Appeal, Clerk of Court by October 29, 2011. The court also granted petitioner extension of time to file a pro-se brief on or before October 24, 2011. Upon the trial transcripts being sent to Richwood Correctional Center, petitioner only got to see his trial transcript only once a week one hour per sitting , this condition was done by unknown Captain of that facility. Petitioner also tried to pay to have a copy made, but the captain left this decision to be determined by the inmate counsel substitute. Subsequently, I never got a copy of the trial – transcript.

Petitioners Direct Appeal was denied and became final on March 23, 2012 within the Louisiana Court Of Appeals.

In the instant case, petitioner forwarded several filings upon the trial court to aquire the trial transcripts. On a November 12, 2012 filing , the District Attorney's office rebutted petitioner's filing as a Post- Conviction Relief Application.

Petitioner is unlearned in the law and was misinformed as to sending a post conviction application form concerning trial transcripts requests.

At no time did petitioner properly address or attack any claims in regards to a attack on his conviction. However, the District Attorney's office rebutted petitioner's record request as a post conviction application.

Even the trial court through it's ruling recognized that petitioner did not brief any claims in detail.

Petitioner avers that his Direct Appeal became final on March 23, 2012, therefore, petitioner humbly prays that his Post Conviction Relief Application be viewed as the initial, in the interest of justice.

On several occasions, petitioner forwarded formal letters to Attorney James E. Tally requesting the Discovery files. Attorney James Tally refused to respond, so petitioner contacted the Louisiana Disciplinary Board on October 25, 2013 advising the board that Mr. Tally was violating his ethical standard by failing to comply with rule 1. 16(d) of the rules of Professional Conduct.

Petitioner initially filed his post conviction relief application on or about March 10, 2014 without a complete record of all evidence upon which his conviction was based, (See La. CONST. ART. 1, 19).

Thereafter, Attorney Tally forwarded some discovery information. Petitioner had to again seek help in retaining more discovery. I received most of of the trial transcript on March 5, 2014.

Relative, Mrs. Viola Nottingham had to purchase ( pg. 492 of the trail transcript), which was suppose to be part of the discovery documentation. It was purchased on August 29, 2014 and mailed to the petitioner on September 3, 2014. Petitioner received it on September 12, 2014.

Where the Public Defender's office initially withheld page 492 from the petitioner, Petitioner then filed a Motion to Amend\ Supplement his Post Conviction Relief Application on November 12, 2014 based on the fact that: (1) He did not have a complete record; (2) His petition wasn't properly before the court :and (3) The trial court hadn't ruled on the initial post conviction relief application, see La. Code Civil Procedure Ann Art. 1151.

Petitioner only became aware on July 31, 2015 of the allege February 8, 2015 Supplemental Post Conviction Relief ruling after this Honorable Court ordered the District Court to answer his writ under First Circuit appeal docket #2015-KW-0584 . Either the 22nd Judicial District Clerk, Johnny D. Crain Jr., failed to forward the Supplemental ruling or Elayn Hunt Correctional Center's mail officials did not hand over the trial court's ruling for the Amended \ Supplemented Post Conviction Relief Application. Petitioner has yet to see any notice concerning the allege 22nd Judicial District court ruling concerning his Amended Post Conviction Relief Application.

Petitioner on July 21, 2015, filed a Reconsideration of the Mandamus concerning the denied portion of that writ which he sent to the 22nd Judicial District Attorney's Office instead of the Clerk of court for the First Circuit Court Of Appeal. Petitioner became aware of his mistake on August 26, 2015 and forwarded the writ to the proper court, (First Circuit ), the same day.

Petitioner also filed a Notice Of Intent to the Trial Court on or about August 9. 2015.

ISSUES PRESENTED FOR REVIEW

DID THE TRIAL COURT ABUSE ITS DISCRETION AND VIOLATE PETITIONER'S FOURTEENTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION AND SIXTH AMENDMENT RIGHT TO A FAIL TRIAL BY ABUSING HIS DISCRETION, IN NOT FINALIZING ALL PRE-TRIAL MOTIOMS OF THE PETITIONER, BEFORE TRIAL COMMENCE, AND, PETITIONER RECEIVED INEFFICTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION.

In the instant case, petitioner filed several per-trial motions upon the court months before the scheduled trial date. The state would like this Honorable Court to believe that there was another court matter being address at the February 2, 2011 trial, but a close look at the minutes clearly indicate that there is no other docket number present, plus horizontal lines do not determine one case from another and I was in the middle of a trial. So the minute entry clearly shows that, my pre-trial motions were a part of this case and, I did file the following motions : Motion to Suppress Identification; The Confession; The evidence; Motion to Quash and Motion for Discovery, as indicated by the minute

entry on February 2, 2011. Petitioner filed timely pre-trial motions, therefore, petitioner had a constitutional right to pre-trial hearings before the trial. Yet, in this court proceeding, petitioner's pre-trial motions were ruled moot two days after the trial. Horizontal line do not determine one court matter from another docket number .

LAW AND ARGUMENT

Article 1,2 sec. 14 of the Louisiana Constitution of 1974 forbids its citizens from being deprived of life, liberty, or property except by due process and equal protection of the law.

A judge shall dispose of all judicial matters promptly efficiently and fairly. He has a adjudicative responsibility to perform the duties of office impartially and diligently. The trial court prejudice petitioner's trial by not following the law and finalizing all pre-trial motions were ruled moot on February4,2011 the day after petitioner was found guilty by a jury trial. Petitioner's constitutional right of due process by equal protection of the law were violated. Petitioner was trialed without any constitutional oversight.

Under the Sixth Amendment of the constitution, petitioner has a right to effective assistance of counsel. However, Attorney Talley fail to file any pre-trial motions or resolve the motions petitioner filed, counsel also fail to interview Cecilia and Paula Traylor then investigate the factual information they knew. Counsel fail to spend adequate time consulting with the petitioner in order for his client to intelligently assist counsel and prepare a defense, See, United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d (1984).

Counsel Talley fail to interview potential witnesses and make a independent investigation of the facts and circumstances of the case, See, Nealy v. Cabana, 764 F.2d 1173, (5th cir. 1985).

Counsel also has a duty to investigate all reasonable lines of defense. Mr. Talley's decision not to undertake substantial pre-trial investigation and instead to investigate the case during trial was not only uninformed it was unreasonable and prejudiced his client's trial , See, Fisher v. Gibson, 282 F. 3d 1296 (Ca. 10 2002). It is evident that counsel did not have a strategy of pointing holes in the evidence or trying to create reasonable doubt in the jury minds. Where an attorney accidentally brings out testimony that is damaging because he has fail to prepare; his conduct cannot be called a strategic choice, an event produced by happenstance of counsel's uninformed and reckless cross examination cannot be called a choice at all, See Strickland,466 U.S. at 691

CLAIM # ONE

In the instant case, the trial court error , abused its discretion and violated petitioner's right to a fail trial by failing to observe petitioner's due process and equal protection of law rights and finalizing all filed pre- trial motions. Petitioner did file the aforementioned motions as is evident by his signing of the outgoing legal mail book - within the Washington Parish Jail and the minute entry on day two of petitioner's trial. The state would like this court to believe that another matter was being addressed within my trial, but the minute entry does not indicate any other docket numbers with this entry, and its highly unlikely that the court would address another court matter in the middle of a jury trial, therefore, this other allege court matter is nothing more than a legal maneuver to deprive the petitioner of his right to a fair trial.

In regards to the standard practice,( Open File Discovery), within the 22nd Judicial District, this was used by Mr Talley to neglect his judicial obligation to file the necessary pre-trial

motions as the constitution requires in order to challenge the District Attorney's case.

In petitioning the pre-trial motions, there's a reasonable possibility that Ms. JoBeth Rickels testimony would have been excluded from the state's evidentiary use at petitioner's trial, that the indictment could have been quash based on two conflicting police reports by the allege victim, the allege confession could have been suppressed due to unlawful conduct by Det. Anthony Stubbs. If counsel had filed a Motion For Preliminary Examination there was a reasonable possibility that the court could have dismissed this case, suppressed the allege confession, or petitioner could have secured testimony to possible impeach the state's witnesses.

But for the trial court's error, the trial results cannot be relied upon as having produced a just result, which renders the results unreliable.

## CLAIM # TWO

In this case, Counsel, James Talley, provided ineffective assistance of counsel when he fail to object to the trial court's refusal to dispose of petitioner's pre-trial motions before trial.

Counsel Talley knew about these motions because they were acknowledged on February 02,2011, in open court, on day two of petitioner's jury trial. Had counsel objected to the trial court's refusal to dispose of pending pre-trial motions or filed pre-trial motions, there's a reasonable possibility that this case could have dismissed at a Preliminary Examination based upon two conflicting police reports from the allege victim, that counsel could have had the allege confession suppressed based on unlawful conduct of Det. Anthony Stubs, quashed the indictment, secured information to impeach the states witnesses, intelligently assisted counsel with a defense strategy, or preserved the trial court's violation of petitioner's constitutional right for appellant review on direct appeal. Counsel, James Talley's conduct completely undermines the constitutional mandate of the adversarial testing process, and completely abandon any type of trial strategy, therefore, the trial results cannot be relied upon, which renders the trial results unreliable.

## CLAIM # THREE

Attorney, James Talley, provided ineffective assistance of counsel by failing to investigate material facts after petitioner advised counsel of information Paula and Cecilia Traylor could provide.

In the instant case, during direct examination Attorney, Talley admitted to briefly meeting with Paula on the trial date, See trial transcript pg. 588, lines 26-28.
Had Mr. Talley interviewed Paula Traylor, he would have discovered that Paul Traylor in the past falsely accused the petitioner of inappropriate sexual behavior with Paula, and that Det. Anthony Stubbs was the investigator, See trial transcript pg. 591 lines 28-32 and 592,lines 1-11. That Paula and Cecilia Traylor possessed plenty information which counsel could have used to impeach Tricia Traylor if he had done a proper interview then investigation.

Trail counsel James Talley, failed to impeach Tricia Traylor's testimony where she testified that she did not tell anyone of the issues of petitioner touching her in any inappropriate way ? In accordance with the trial testimony of Paula Traylor's Tricia Traylor told her that petitioner accidentally touched her but it was never reveled where or if it was inappropriate, fondling or just touched her private's ? ( See , Tr. Trans. 597, line 1-4 ); but at petitioner's trial Tricia Traylor testified that she did not tell anyone . Paula Traylor testified for the petitioner

that at her dad's house Tricia Traylor stated to her that whenever they were visiting with her with her dad, petitioner touched her ? Tricia Traylor never told no one of this issue ? Why ? Why didn't Tricia Traylor tell her aunt Paula what had happened to her at that time if they tell each other everything to tell ? These events had not reasonably taken effect because these issues never happened. Prior to petitioner and Ms. Cecilia Traylor even getting involved in a committed relationship. Tricia Traylor was going to counseling / therapy for sexual – abuse. Testimony derived from character witnesses shows that Tricia Traylor had been previously sexually – abused by someone but not the petitioner. Cecilia Traylor testified that she and Sharon Posey had been taking Tricia to professionals, counselor's and therapist because of this behavioral issues, where her grandfather had sole custody of her and her brother an the only given facts are that Tricia told her aunt Paula that things happened while visiting with her dad Paul at his home not the petitioner's home. Tricia Traylor never told anyone of these events as they occurred and waited one in half years to tell her mom's about these issues ? Tricia never said a word to her brother whom was there, maw- maw Cecilia who was there, Paula who was there that petitioner touched her inappropriately but instead told her mom Sharon / Shannon or even grandfather Paul, whom did not like petitioner because petitioner was going out with his former wife ? Paula and Cecilia Traylor has no reason to believe that petitioner inappropriately touched Tricia Traylor ? Both witnesses testified that petitioner allowed both Tricia and her brother to live with him at his cabin ? Paula Traylor also testified and signed a statement that her father falsely accused petitioner of touching her? Why ? Is this testimonial fact Untrue ? What reason dose this witness Paula Traylor has to lie on her niece Tricia Traylor ? With these inconsistencies in her testimony, Tricia Traylor's testimony is insufficient to sustain a conviction where the inconsistencies or confusing , contradictorily, and was a waist of the courts time during petitioner's trial. Counsel James Talley , should have impeached Tricia Traylor as to this testimony where an effective counsel would have examined the police report , counseling tapes, investigated all the alleged requisites that would have precluded the petitioner from being found guilty for this alleged offense. On are about December 18, 2009, Tricia Traylor initially advised Deputy Steven Galloway of the Washington Parish Sheriff's Department that the petitioner stuck his hands down her clothes and hurt her several times ( approximately, 4 – times ) around her private, ( see, pg. 3 of incident report number # 200912618 ). This information is inconsistent with the January 11, 2010 interview of Tricia Traylor by Ms. JoBeth Rickels and Detective Anthony Stubbs . In this interview she makes no mention that petitioner touched her four – times or that she was hurt. She now advises that the petitioner only touched her 1, time and attempted to do so another time . ( see, pg. 4, incident report number # 2009 – 120618 ). And again her story changed to petitioner only touched her 2 – times . ( see. Tr. Trans. Pg . 474, line 28 – 32, and 475 , line 1 – 2) and still dose not mention that she was hurt as was alleged in the initial December 18, 2009 interview with officer Steven Galloway.

(2.) Tricia Traylor advised Detective Anthony Stubbs, that the petitioner threatened her that she better not tell or else, ( see, pg, 4 of incident report number # 2009 – 120618 ). Her testimony changed to to the petitioner did not threaten her , ( see, Tr. Trans. Pg . 461, line 23 – 24 , and pg. 476 , line 1-7 ).

(3 ) Tricia Traylor advised Detective Anthony Stubbs, that the incident occurred when they were all at the champ ? ( see, pg . 4 of incident report number # 2009 – 120618 ). The Trial testimony changed to Susie and Paula not being at the champ , ( see, Tr. Trans. Pg . 452, line 6 -15 , and pg,. 471, line 17 – 22 ) .

(4.) ( see, pg. 4 of incident report, Tricia Traylor , advised Detective Stubbs that the petitioner made her touch his penis through his pants on the outside of his pants . Her trial testimony changed to her touching the petitioner's middle under his shorts ? ( see, Tr. Trans. pg. 460, line 13 – 30 ).

( 5 ) In page 3 of the incident report by Officer Steven Galloway, Shannon Traylor advised the officer that the alleged crime was discovered during a family discussion about girlfriends and boyfriends ? But when Tricia Traylor was ask at the trial how the alleged crime came out, she stated she did not know , ( see, Tr Trans . pg. 462, line 24 – 26 ).

Had counsel interviewed then investigated the information gained from Paula and Cecilia Traylor it is inconceivable that Mr James Talley would not have ;

( 1 ) Subpoenaed Tricia Traylor's O.C. S. Records ;

( 2 ) Subpoenaed Paul Traylor ;

( 3 ) Subpoenaed O. C. S. Therapist Charletta Hoover ;

( 4 ) Subpoenaed Destin Traylor ;

( 5 ) Subpoenaed Tricia's Foster Mother , Sharon Posey ;

(6 ) Entered the two conflicting Police Reports into the court record ; And

(7 ) Subpoenaed Deputy Steven Galloway;

Mr Talley's intentional refusal to properly interview Cecilia and Paula Traylor after advisement by the petitioner investigate this case is ineffective assistance of counsel . This clearly shows that Mr Talley fail to investigate this case and had no trial Strategy which was obviously his intentions. But for counsel's errors, the results cannot be relied upon as having a just result , which render the trail results unreliable ; Also if counsel Talley had investigated the stress interview between Det, Anthony Stubbs and petitioner, there's a reasonable possibility that he could have discovered;

( 1 ) That Det, Stubbs promise to help petitioner if he did another Stress test ;And

( 2 ) That the Exerts were doctored / altered to ensure a conviction on petitioner, The constitution forbids a confession to be induced by threat or promise .

Attorney Talley knew that petitioner is a layman to the Law and should have objected to the use of this inadmissible evidence (Stress test), against his client . The record reflects that petitioner advised the court that Det, Anthony Stubbs confused him , see Trial Transcript pg. 345, lines 11 -14 and scared him , see 347 , lines 4 – 7 . Petitioner also advised the court of how Det, Stubbs promised him help if he took the second stress test see Trial Transcript pg, 347, lines 8 – 10 , 15 – 17. But for counsel's errors the results cannot be relied upon as having a just result, which render the trial results unreliable.

CLAIM # FOUR

Attorney Talley was ineffective assistance of counsel for failing to object to only one picture being shown to the jury.

If counsel had objected to the showing of one picture being presented to the jury, it would have reserved this issue for appellate review, subsequently, if counsel had presented the other two pictures to the jury, they could see that there was no way petitioner could pick that child up from the back of that chair like she testified. Therefore, there's a reasonable possibility that the jury would not have believed this witness ,but for counsel's error, the trial results cannot be relied upon as having produced a just result, which renders the results unreliable;

In the instant case, the trial court abused its discretion when the trial court disregarded his right to a fair trial through due process and equal protection of the laws. The law requires a court to address any pre-trial motions within its jurisdiction so the parties can have the satisfaction of

venue in discovery\ inspection,and relief sought in its pre-trial motions.

The unprofessional errors by Attorney James Talley was that he fail to provide effective assistance of counsel by failing to file important pre-trial motions in order to get his client a fair trial, counsel also did no investigating or had a trial strategy.

Counsel also allowed the trial court to ignore petitioner's pre-trial motions, without objections. Moreover, there's a strong possibility that had counsel objected to this and other issues they could have been held over for appellant review, therefore, there's a reasonable possibility that the results could have been different.

These given facts has substantiated that given all testimonial facts, witness Tricia Traylor made up the alleged allegations which proffered the petitioner to be found guilty of this said offense.

Strickland vs. Washington . depicts this same standard where counsel was deficient in his duties not strategies, and where the deficiencies prejudiced the petitioner in not resulting in a fair and just trial . An effective counsel upon accruing a client's case, would do a thorough investigation first into the alleged charged offense? This was not done ?

Had counsel interviewed then investigated the information, there's a reasonable possibility that the outcome would have been different.

The issues that petitioner has provided shows his attorney's unprofessional errors were not reasonable and not to be considered sound trial strategy . Any other competent Attorney would have articulated these issues , due to them being the norm in the legal profession in criminal cases. The issues that have been presented are not outside the wide range of professionally competent assistance . See Michel v. Louisiana , 350 U.S. S. 91, 76 S.Ct. 158.

In Strickland v Washington, 466 U.S. 668, 686 (1984); the United States Supreme Court held to establish that his counsel was ineffective, first he must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel ", guaranteed the defendant by the Sixth Amendment of the U.S. Constitution. The second standard is to show that there is a reasonable probability that for counsel's error, the result of the proceeding would have been different.. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. 693. Petitioner contends if acting effectively, counsel would have preserved, argued, objected to the issues cited within this case for the higher court to review on petitioner's behalf.

CONCLUSION

WHEREFORE, petitioner prays that this Honorable First Circuit Court of Appeal should grant petitioner- appellant's Application for Post Conviction relief under Art. 930, and all other relief petitioner is entitled.

William Powell

William David Powell
Elayn Hunt Correctional Center
Post Office Box 174
ST. Gabriel, Louisiana 70776

VERFICATION CERTIFICATE OF SERVICE

I . William D. Powell, hereby certify that a true and correct copy of the foregoing has been forwarded to the clerk of court for the Louisiana First Circuit Court Of Appeal, by placing the same in the Prison mail Box, properly addressed, postage prepaid, on this ___________ day of ____________________________, 2015.

Done this _____ , day of ____________________ , 2015

William Powell
William D. Powell

I , William D. Powell, hereby swear under the penalty of perjury that I have read the foregoing application for supervisory writ of review and swears or affirms that all of the information therein is true and correct.

William Powell
William D. Powell

William Powell DOC#159159
E.H.C.C. P.O. Box 174
St Gabriel LA 70776

US POSTAGE PITNEY BOWES
ZIP 70776 $ 003.50
02 4W
0000335072 MAR 09 2017

Eastern District Court
Hale Boggs Federal Building
500 Poydras Street RM C151
New Orleans, LA 70130